OPINION OF THE COURT
Arthur E. Blyn, J.
Motion by plaintiff for summary judgment.
The following undisputed facts appear from the papers submitted. On January 10, 1980 one Georges Bloch requested his Swiss bank, Credit Suisse (Credit), to issue an irrevocable letter of credit in favor of plaintiff Continental Time Corp. (Continental) in the principal sum of $236,961.90 in order to facilitate payment for a shipment of watches sold by Continental to Bloch. Said letter of credit was issued and, as amended, was valid until February 11, 1980 and payable upon presentation of certain documents. Defendant Merchants Bank of New York (Merchants) acted as the collecting bank on behalf of Confinen *908 tal in the presentation and negotiation of the documents called for by the letter of credit.
On January 23, 1980 Continental delivered to Merchants the various documents for presentation to Credit including a sight draft for the full amount. Merchants forwarded the documents on that date to Credit for payment.
By telex dated January 29, 1980 Credit advised Merchants it was refusing the documents because of an alleged discrepancy in one of them (airway bill) which telex further provided, “documents at your disposal * * * please authorize us to present documents on collection basis”. By telex of the same date Merchants authorized Credit to present the documents on a collection basis. Bloch refused to pay alleging a setoff against Continental.
In this action Continental seeks to recover the principal amount of the letter of credit alleging in its complaint two causes of action. The first sounds in negligence and the second claims breach of contractual duties under sections 4-202, 4-501, 4-503 and 5-111 of the Uniform Commercial Code. Continental contends Merchants failed to (a) detect those material discrepancies claimed to exist by Credit in the documents delivered under the irrevocable letter of credit in the course of Merchants’ review of the documents prior to delivery and presentment; (b) timely notify Continental of Credit’s refusal to pay under the irrevocable letter of credit as well as the reasons therefor; (c) request instructions of Continental as to. what to do following Credit’s refusal to pay; (d) request the documents back for correction prior to the expiration date of the irrevocable letter of credit; and (e) receive authority from Continental to place the irrevocable letter of credit on a “collection basis”. Simply stated Merchants takes the position it took all necessary and proper actions in presenting the documents for payment.
At the outset, since there appears to be some confusion in the parties’ minds, it is necessary to identify the precise nature of the transaction at issue and the applicable legal standards. Article 4 of the Uniform Commercial Code is entitled “Bank Deposits and Collections”. Part 2 of that *909 article deals with the obligations in general of collecting banks and part 5 more specifically with the collection of documentary drafts, defined in subdivision (f) of section 4-104 of the Uniform Commercial Code as “any * * * draft with accompanying documents * * * to be delivered against honor of the draft”. Article 5 of the Uniform Commercial Code deals with letters of credit. The Court of Appeals in United Bank v Cambridge Sporting Goods Corp. (41 NY2d 254, 258-259) addressed the question of the law applicable to letters of credit and the relationship between them and documentary drafts as follows: “Article 5 of the Uniform Commercial Code, dealing with letters of credit, and the Uniform Customs and Practice for Documentary Credits promulgated by the International Chamber of Commerce set forth the duties and obligations of the issuer of a letter of credit.2 A letter of credit is a commitment on the part of the issuing bank that it will pay a draft presented to it under the terms of the credit, and if it is a documentary draft, upon presentation of the required documents of title (see Uniform Commercial Code, § 5-103).” In the footnote (2) the court, citing subdivision (4) of section 5-102 of the Uniform Commercial Code, pointed out that the Uniform Customs and Practice for Documentary Credits controls, in lieu of article 5, when by its terms the letter of credit is made subject to the Uniform Customs and Practice. That is the case at bar. It is thus apparent that while it may be said that Merchants handled a single transaction for Continental, that transaction was duplex in nature, the documentary draft aspect being governed by article 4 of the Uniform Commercial Code and the letter of credit aspect being governed by the Uniform Customs and Practice rather than article 5 of the Uniform Commercial Code.
With that analytical preamble the court turns to the various grounds advanced by Continental for recovery as a matter of law.
Continental’s first contention focuses on the letter of credit and the supporting airway bill. The letter of credit contains specific requirements regarding the language of the airway bill. The document presented to Credit was not filled in in the portion entitled “Airport of Departure” and “Airport of Destination”. (This was the basis for the rejec *910 tiom by Credit.) The letter of credit is silent in that regard. The parties’ reliance on sections of article 5 of the Uniform Commercial Code on this issue is misplaced. The Uniform Customs and Practice, however, provides that banks assume no responsibility or liability for the form and sufficiency of documents (art 9). Further, article 7 of the Uniform Customs and Practice provides “Banks must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with [the letter of credit]”. On the basis of the foregoing it may not be said as a matter of law that Merchants breached any duty in its review of the airway bill prior to presentation of the documents to Credit.
The next contention, although couched in terms of notice of refusal to pay under the letter of credit, in fact deals with Merchants’ obligation to notify Continental of dishonor of the documentary draft. Section 4-501 of the Uniform Commercial Code, relied upon by Continental, imposes an obligation upon Merchants to do so “seasonably”. Continental maintains no such notice was given. Merchants, pointing principally to the deposition of Continental’s president in this action, argues otherwise. This court need not determine whether a bona fide issue of fact exists on the issue of notice of dishonor as such issue is a red herring in view of the additional obligations imposed upon Merchants which, as hereinafter set forth, this court finds it did not meet.
Beyond notice of dishonor of the documentary draft Merchants was obligated under subdivision (b) of section 4-503 of the Uniform Commercial Code to “use diligence and good faith to ascertain the reason for dishonor, must notify its transferor [Continental] of the dishonor and of the results of its effort to ascertain the reasons therefor and must request instructions.” (Emphasis added.) Continental contends Merchants failed to request instructions of it. The opposing affidavit of a Merchants’. officer, who fails to indicate any source of his knowledge, opines: “Upon rejection by credit suisse of the documents, merchants, as is its custom, telephoned its customer of the discrepancies and awaited their instructions. After conferring with its customer, [as is its custom and practice] merchants au *911 thorized credit suisse to re-present the documents on a collection basis as requested by credit suisse in order to have the documents paid”. (Matter in brackets handwritten.) Such a conclusory statement of a custom of the bank totally devoid of evidentiary facts by an affiant with no personal knowledge is hardly laying bare one’s proof to demonstrate the existence of a triable issue.
Rather than request instructions, the record is clear that Merchants unilaterally and without authorization from Continental placed the irrevocable letter of credit on a collection basis. Testimony by experts from both Merchants as well as Credit in a related Federal action unequivocally establish that the steps taken by Merchants were contrary to banking custom and practice in failing to afford Continental an opportunity to cure the claimed deficiency in the airway bill and resubmit the letter of credit for payment, which it had a right to do, as well as destroying the irrevocability of the letter of credit (releasing Credit’s obligation to pay). Moreover, such conduct is violative of article 3(c) of the Uniform Customs and Practice which provides that an irrevocable letter of credit cannot be canceled without the agreement of all the parties thereto, as well as contrary to decisions (1975-1979) of the International Chamber of Commerce Banking Commission under the Uniform Customs and Practice (references 13, 14).
For the foregoing reasons the motion is granted and the clerk is directed to enter judgment accordingly.